UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CURTIS COCKERUM,<br><br>                Petitioner,<br><br>v.<br><br>WARDEN CARLIN,<br><br>                Respondent. | Case No. 3:09-cv-00666-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in this habeas corpus case is Respondent's Motion for Summary Judgment. (Dkt. 11.) Petitioner has filed a Response. (Dkt. 29.) Both parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 27.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Having fully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, in the interest of avoiding further delay, the Court shall decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

## BACKGROUND

On April 4, 2006, Petitioner was arrested for purchasing methamphetamine from an undercover officer, as a result of a reverse sting operation. (State's Lodging B-1, p. 2.) Criminal proceedings were commenced in the Fourth Judicial District Court in Boise, Idaho. (State's Lodging A-1.) Petitioner pursued a motion to suppress, which was denied by the state district court. (*Id*., pp. 42-47.) Petitioner and the State entered into a plea agreement, whereby Petitioner agreed to plead guilty to possession of a controlled substance, with the right to withdraw his guilty plea if he prevailed on appeal on the motion to suppress issue.[1] (*Id*., pp. 51-52.) The State agreed to recommend a unified five-year sentence with one year fixed, refrain from filing a persistent violator enhancement, and recommend that Petitioner be released on his "own recognizance to treatment." (State's Lodging A-3, p. 86-87.) The parties also agreed to "no failures to appear in this case, co-operation with the pre-sentence investigation and no new crimes charged prior to the sentencing hearing." (*Id*.) The parties presented their agreement to the court on July 12, 2006, and the court accepted it, setting the sentencing hearing six weeks away. (*Id*., pp. 103-04.)

---

[1] In Petitioner's Statement of Disputed Facts, he corrects a mistake set forth in the State's summary judgment briefing: the State charged him with possession of a controlled substance only (not delivery) and charged his co-defendant with delivery. (State's Lodging A-1, p. 20.) Respondent has mistakenly attributed the co-defendant's charges to Petitioner in the briefing. The Court has used Plaintiff's, not Respondent's, version for purposes of this decision.

**MEMORANDUM DECISION AND ORDER - 2**

Later, the State learned that, in the presentence investigation report, the woman who was helping take care of Petitioner's daughter[2] had alleged that Petitioner threatened that he was going to take the child and "get[ ] the hell out of there" (State's Lodging B-4, p. 3); the woman also reported she believed Petitioner had been using drugs during his release. (*Id.*) As a result, the State filed a motion to modify or revoke the bond for the reason that "the State has concerns the Defendant may fail to appear for sentencing," and a motion for an expedited hearing on September 20, 2006. (State's Lodging A-1, p. 63-64.) The state district court set an expedited hearing on the State's motion for September 21, 2006, at which Petitioner appeared. After the hearing, the court granted the State's motion to revoke release and took Petitioner into custody. (State's Lodging A-1, pp. 69-70).

On September 26, 2006, Petitioner was brought to the court for sentencing. (*Id.*, p. 71.) Petitioner's counsel asked the court not to take into consideration certain information in the PSI report, and the court continued the hearing so that Petitioner could prepare a request for more specific redactions. (*Id.*, p. 72.) Sentencing was continued to October 13, 2006. (*Id.*)

---

[2] In Petitioner's Response, he notes that the Idaho Court of Appeals made a mistake of fact in the record as to the identity of the woman who reported that Petitioner said he might leave the area. Petitioner states that Mrs. Tina Kobernick told investigators that Petitioner (1) threatened Kobernick and (2) said he was going to take his daughter and "get the hell out of there." Petitioner states that Kobernick was not the mother of Petitioner's child; rather, Petitioner states that he has had full custody of his daughter since 1996, and that the mother of the child was Mary Mace, who was not involved in the incident. (Petitioner's Response, Dkt. 29, pp. 8-9.) In this action, the identity of the woman is not material to the Court's decision in this case, nor was it material to the underlying state court decision.

**MEMORANDUM DECISION AND ORDER - 3**

Respondent asserts that Petitioner was required to serve only six additional days in custody before his original sentencing hearing on September 26, 2006, which was continued to October 13, 2006 (23 days after revocation of release) as a result of Petitioner's requests for redaction of the PSI. On October 13, 2006, judgment was entered, and Petitioner was sentenced to a unified term of five years, with one year of fixed custody. (*Id.*, pp. 75-76.) In summary, Petitioner was on release from July 12, 2006 to September 21, 2006, a total of 72 days, and he was in custody for 6 days before the original sentencing date, or 23 days before the continued sentencing date.

Petitioner later filed a motion to withdraw his guilty plea, asserting that his due process rights were violated when the State breached the plea agreement by seeking to terminate release, rather than permitting Petitioner to remain released through the date of sentencing, as earlier recommended. The motion was denied. (State's Lodging A-2, pp. 53-67, 118-19.)

On appeal, the Idaho Court of Appeals determined that, under the terms of the plea agreement, the State was not prohibited from requesting early termination of release. (State's Lodging B-4.) That court interpreted the plea agreement to require the prosecutor only *to recommend* that Petitioner be released on his own recognizance for the purpose of obtaining treatment prior to sentencing. The Idaho Supreme Court denied Petitioner's petition for review. (See Attachments to Complaint, Dkt. 3, pp. 7-11.)

Petitioner then brought the same claim in this federal habeas corpus action. (Dkt. 3.) In February 2011, the Court preliminarily determined that Petitioner did not need a

**MEMORANDUM DECISION AND ORDER - 4**

copy of the Pre-Sentence Investigation Report (PSI) in order to fully present his claim, because the Idaho Court of Appeals's decision on whether the State was prohibited from requesting early termination of release was a question of law. (Dkt. 28.)

After reviewing the briefing of the parties regarding the Motion for Summary Judgment, the Court again concludes that the issue before the Court is a matter of law, and the PSI is not necessary to the Court's decision. Thus, disclosure of the PSI to Petitioner is not necessary.

## REVIEW OF SUMMARY JUDGMENT MOTION

**1.     Standard of Law**

Summary judgment is appropriately granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure. Rule 11, Rules Governing Section 2254 Cases. Accordingly, summary judgment motions are appropriate in habeas corpus proceedings where there are no genuine disputes as to any material facts and the moving party is entitled to judgment as a matter of law. *Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977). Judicial notice will be taken of the court docket in the underlying state court proceedings. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

**MEMORANDUM DECISION AND ORDER - 5**

Under the Anti-terrorism and Effective Death Penalty Act (AEDPA), the Court cannot grant habeas relief on any federal claim that the state court adjudicated on the merits unless the adjudication of the claim:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d)(1) has two clauses, each with independent meaning. For a decision to be "contrary to" clearly established federal law, the petitioner must establish that the state court applied "a rule of law different from the governing law set forth in United States Supreme Court precedent, or that the state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from the Court's precedent." *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000).

To satisfy the "unreasonable application" clause, the petitioner must show that the state court was "unreasonable in applying the governing legal principle to the facts of the case." *Williams*, 529 U.S. at 413. A federal court cannot grant relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; the state court's application of federal law must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002). The state court need not

**MEMORANDUM DECISION AND ORDER - 6**

cite or even be aware of the controlling United States Supreme Court decision to be entitled to AEDPA deference. *Early v. Packer*, 537 U.S. 3, 8 (2002).

To be eligible for relief under § 2254(d)(2), the petitioner must show that the decision was based upon factual determinations that were "unreasonable in light of the evidence presented in the State court proceeding." *Id*.

In *Harrington v. Richter*, 131 S.Ct. 770 (2011), the United States Supreme Court reiterated that the federal courts may not simply re-determine the claim on its merits after the highest state court has done so, just because the federal court would have made a different decision. Rather, the review is necessarily deferential. The United States Supreme Court explained that under § 2254(d), a habeas court (1) "must determine what arguments or theories supported or . . . could have supported, the state court's decision;" and (2) "then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id*. at 786. If fairminded jurists could disagree on the correctness of the state court's decision, then a federal court cannot grant relief under § 2254(d). *Id*. The Supreme Court emphasized: "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (internal citation omitted).

Under all circumstances, state court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**MEMORANDUM DECISION AND ORDER - 7**

A prosecutor's breach of a plea agreement is a cognizable federal habeas corpus claim. Due process requires that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). The construction and interpretation of state court plea agreements and the obligations resulting from the agreements are governed by state law. *Ricketts v. Adamson*, 483 U.S. 1, 6 n.3 (1987); *Davis v. Woodford*, 446 F.3d 957, 962-63 (9th Cir. 2006).

2. **Discussion of *Santobello* Claim**

   The Idaho Court of Appeals characterized Petitioner's claim as follows:

   > As part of the plea agreement in this case, the state stipulated that it would recommend that Cockerum be released on his own recognizance for the purpose of obtaining treatment prior to sentencing. Although the district court was not required to accept this condition, the state did make such a recommendation and the district court allowed Cockerum's release with the specific condition that he immediately obtain treatment. The state therefore satisfied the condition that it recommend Cockerum's release on his own recognizance. Later, based on information obtained from the PSI, namely that Cockerum had allegedly threatened the mother of his child that he was going to take the child and "get[ ] the hell out of there" and that she also believed he had been using drugs during his release, the state filed a motion for a bench warrant to ensure Cockerum's presence for sentencing.

   (State's Lodging B-4, p. 3.)

   In rejecting Petitioner's claim, the Idaho Court of Appeals relied upon *Santobello*, reasoning:

   > Cockerum asserts that the state breached the plea agreement by requesting the bench warrant. We are unpersuaded. The plea agreement did not prohibit the state from taking this action. Cockerum contends that he had not actually fled the jurisdiction nor breached any obligation to appear

**MEMORANDUM DECISION AND ORDER - 8**

> in court. The state was not required to wait for Cockerum to disappear before filing the motion for a bench warrant. Moreover, because the state was not prohibited from taking such action, Cockerum's contention that he had honored the agreement is irrelevant. The filing of the motion for a bench warrant was not a breach and did not make Cockerum's plea unknowing or involuntary.

(State's Lodging B-4, p. 3.)

### A.   *Was the Idaho Court of Appeals's Decision Based on an Unreasonable Determination of the Facts Found in the State Court Record?*

Habeas corpus relief is available if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). As noted above, the Idaho Court of Appeals erroneously referred to the person who provided the information to the State as the mother of Petitioner's child. Petitioner clarifies that he has had full custody of his daughter at that time, the mother of the child was Mary Mace, and the identity of the woman informant was Tina Kobernick. (Petitioner's Response, Dkt. 29, pp. 8-9.)

Because the identity of the informant was immaterial to the conclusion of the Idaho Court of Appeals, it does not follow that this error is an adequate basis for this Court to conclude that the Idaho Court of Appeals's decision is based on an "unreasonable determination of the facts" under § 2254(d)(2). Thus, relief is not warranted on factual grounds.  The Idaho Court of Appeals focused, properly, on the fact that the prosecutor fulfilled the promise to *recommend* presentence release for the purpose of obtaining treatment, and the trial court did just that.  The subsequent events involving allegations that the Petitioner had threatened to leave the jurisdiction with his daughter

**MEMORANDUM DECISION AND ORDER - 9**

prior to sentencing were independent events, followed the prosecutor having met the promise of the plea agreement, and constituted a scenario that did not depend, for purposes of the particular legal issue involve, upon the correct identify of the person bringing forth the information.

> B. *Was the Idaho Court of Appeals's Decision contrary to, or an unreasonable application of, Santobello?*

Respondent argues that the Court of Appeals's opinion is not contrary to, or an unreasonable application of, *Santobello* or any other United States Supreme Court precedent. In order to prevail under § 2254(d)(1), Petitioner must show that the decision that there was no breach of the plea agreement is "objectively unreasonable" based on the facts found in the state court record. The United States Supreme Court has explained:

> This distinction [between an unreasonable application and a merely incorrect application] creates "a substantially higher threshold" for obtaining relief than de novo review. *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

*Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010).

In *Renico*, the Court reviewed whether there were other "plausible ways to interpret the record" to determine that the state court decision at issue was not unreasonable. 130 S.Ct. at 1865. "AEDPA prevents defendants–and federal courts–from

**MEMORANDUM DECISION AND ORDER - 10**

using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Id.* at 1866.

Here, the Idaho Court of Appeals determined that the State did not breach the plea agreement because the agreement required only that the State *recommend* Petitioner's release. The State made the recommendation, and the state district court adopted the recommendation. The Idaho Court of Appeals further determined that the State was not prohibited from later seeking revocation based on a new incident that occurred after the recommendation had been made.

Petitioner sets forth several arguments to show that the Idaho Court of Appeals's decision is objectively unreasonable. First, Petitioner argues that the agreement to recommend that he be released on his own recognizance prior to sentencing carried with it an implied promise not to seek termination of that release. While this may be one reasonable interpretation of the plea agreement terms, Petitioner has not shown that the decision of the Idaho Court of Appeals is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Richter*, 131 S.Ct. at 786–87. Here, the Idaho Court of Appeals rejected the argument that the plea agreement contained such a prohibition, reasoning that the "state was not required to wait for [Petitioner[ to disappear before filing a motion for a bench warrant." (State's Lodging B-4, p. 3.) The language of the plea agreement does not contain such a prohibition, nor it is unreasonable under the circumstances to refuse to interpret the plea agreement to contain such a prohibition,

**MEMORANDUM DECISION AND ORDER - 11**

considering, as the Idaho Court of Appeals did, the consequences to the public if convicted felons awaiting sentences could not be prevented from fleeing under such plea agreement terms if the State obtained new information that flight may occur.

  Petitioner has several other arguments that perhaps could have been adopted by the Idaho Court of Appeals, but were not. This Court may not determine whether the state court decision was erroneous, but only whether it was objectively unreasonable. None of Petitioner's arguments shows that the decision was unreasonable. For example, Petitioner argues that the State breached the agreement by requesting termination of release in the face of Petitioner's trustworthy record of appearing at every hearing, while Respondent counters that if the State breached the agreement, it was excusable because Petitioner's suggestion of fleeing was a first material breach.

  Petitioner alternatively argues that the plea agreement specified that the State could revoke the plea agreement *only* for the specific reasons stated by the prosecutor: "no failures to appear in this case, co-operation with the pre-sentence investigation and no new crimes charged prior to the sentencing hearing." (State's Lodging A-3, pp. 86-87.) However, the language of the plea agreement was not so specific to render *only* that interpretation possible, and all other interpretations implausible or unreasonable. In addition, potential "failure to appear," was the subject of the request for bond revocation, arguably bringing the reason within the three specified reasons.

  While Petitioner also argues that any breach should have warranted permitting him to withdraw his plea, Respondent argues that, if a breach occurred, Petitioner was

**MEMORANDUM DECISION AND ORDER - 12**

deprived of only six additional days of freedom, was given credit for time served, and actually received the recommended sentence of a unified five-year term with one year fixed, thus giving Petitioner the benefit of the bargain of the plea agreement. The record shows that Petitioner was on release a total of 72 days, and he was in custody only for 6 to 23 days before the sentencing hearings. *Cf. Santobello*, 404 U.S. at 499 (breach occurred where the prosecutor promised not to make a sentencing recommendation, and a substitute prosecutor, who was unaware of that promise, in fact, made a recommendation for the maximum sentence, in contravention of the plea agreement).

      Having reviewed the record and the arguments of the parties, the Court concludes that the Idaho Court of Appeals's decision was neither unreasonable nor erroneous: it was a reasonable (and, in this Court's view, the most reasonable) interpretation of the plea agreement, and the decision was a reasonable application of *Santobello* to the plea agreement. It is not enough to argue that other reasonable alternative decisions could have been reached. Petitioner has not shown that the decision of the Idaho Court of Appeals is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Richter*, 131 S.Ct. at 786–87. Because no unreasonableness or implausibility has been shown, Petitioner has not shown that he is entitled to relief under § 254d(1).

**MEMORANDUM DECISION AND ORDER - 13**

## REVIEW OF THE CLAIMS AND THE COURT'S DECISION
## FOR PURPOSES OF CERTIFICATE OF APPEALABILITY

In the event Petitioner files a notice of appeal from the Order and Judgment in this case, the Court now evaluates the claims within the Petition for suitability for issuance of a certificate of appealability (COA), which is required before a habeas corpus appeal can proceed. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule 11(a), Rules Governing Section 2254 Cases.

A COA will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further*.*" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

When a court has dismissed the petition or claim on the merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. The COA standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal. *Miller-El*, 537 U.S. at 336*.*

**MEMORANDUM DECISION AND ORDER - 14**

Here, the Court has denied Petitioner's claim on the merits. The Court finds that additional briefing on the COA is not necessary. Having reviewed the record again, the Court concludes that reasonable jurists would not find debatable the Court's decision on the merits of the claim raised in the Petition and that the issues presented are not adequate to deserve encouragement to proceed further. The claim was well-developed by counsel in the state courts. The Court again concludes that the state court decision is not unreasonable in material fact or law, and the Court agrees with the outcome of the claim. The Court has carefully searched the record and reviewed the law independently of what Respondent has provided to satisfy itself that justice has been done in this matter where Petitioner is representing himself pro se. As a result, the Court declines to grant a COA on any issue or claim in this action.

If he wishes to proceed to the United States Court of Appeals for the Ninth Circuit, Petitioner must file a notice of appeal in this Court, and simultaneously file a motion for COA in the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b), **within thirty (30) days after entry of this Order**.

## ORDER

**IT IS ORDERED:**

1. Respondent's Motion for Summary Judgment (Dkt.11 ) is GRANTED. Petitioner's Petition (Dkt. 3) is DISMISSED with prejudice.

2. The Court will not grant a Certificate of Appealability in this case. If Petitioner chooses to file a notice of appeal, the Clerk of Court is ordered to

**MEMORANDUM DECISION AND ORDER - 15**

forward a copy of this Order, the record in this case, and Petitioner's notice of appeal, to the United States Court of Appeals for the Ninth Circuit.

DATED: **September 2, 2011**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge